# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 27, 2017

Plaintiff-Appellee,

v

No. 330600
Oakland Circuit Court
LC No. 2015-254477-FC

MICHAEL JOHN FRANKLIN,

Defendant-Appellant.

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*ii*). The trial court sentenced defendant to a prison term of 12 to 40 years for each conviction, to be served concurrently. For the reasons set forth in this opinion, we affirm.

## A. FACTS

Defendant was convicted of sexually abusing his biological daughter in their family home in Southfield. The victim, aged 16 at the time of trial, testified that defendant began sexually abusing her in 2012, shortly after she turned 13 years old. The sexual assaults occurred "once or twice a week" in the living room[1] or her bedroom. Regarding the four charged offenses, the victim testified that defendant penetrated her vagina with his penis on at least two occasions and licked her vagina on at least two occasions. She stated that additional uncharged sexual acts occurred at her paternal grandmother's house in Detroit after defendant moved out of the family home in April 2014. The last sexual assault occurred at the grandmother's house in December 2014. The victim revealed the incidents to a classmate in February 2015. The defense theory at trial was that defendant did not do anything inappropriate, and that the victim's testimony was not credible.

## B. ANALYSIS

---

[1] Deoxyribonucleic acid (DNA) testing of semen discovered on a couch cushion in the living room revealed the presence of DNA that matched defendant's DNA profile.

# I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to establish his guilt of the two counts of CSC-I involving cunnilingus.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012) (citation omitted). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

As applicable to this case, a "person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person," "that other person is at least 13 but less than 16 years of age," and "the actor is related to the victim." MCL 750.520b(1)(b)(*ii*). In challenging the two CSC-I convictions involving cunnilingus, defendant argues only that the necessary element of penetration was not proven because the evidence failed to establish beyond a reasonable doubt that he "inserted" his tongue in the victim's vagina. Preliminarily, defendant's argument is based on the faulty understanding that, in order to convict him of CSC-I involving cunnilingus, it was necessary to find an actual physical intrusion into the victim's genital opening. Sexual penetration is statutorily defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body. . . ." MCL 750.520a(r). Thus, an act of cunnilingus, by definition, constitutes an act of sexual penetration. *People v Legg*, 197 Mich App 131, 132; 494 NW2d 797 (1992). Cunnilingus involves "the placing of the mouth of a person upon the external genital organs of the female which lie between the labia, or the labia itself, or the mons pubes." *People v Harris*, 158 Mich App 463, 470; 404 NW2d 779 (1987). Thus, a "[d]efendant's touching with his mouth of the urethral opening, vaginal opening, or labia establish[es] cunnilingus." *Legg*, 197 Mich App at 133.

The victim testified that on at least two occasions, defendant licked her genital area. Specifically, he placed his tongue on her "vagina" and "clitoris." She knew the name of the specific area where defendant placed his tongue, but in response to additional questioning, she further indicated that defendant placed his tongue in the area where she wiped after going to the bathroom. This testimony was sufficient to prove that defendant performed two acts of cunnilingus. "There is no requirement, if cunnilingus is performed, that there be something additional in the way of penetration for that sexual act to have been performed." *Harris*, 158 Mich App at 470. Accordingly, there was sufficient evidence to support defendant's two convictions of CSC-I involving cunnilingus.

# II. PROSECUTOR'S CONDUCT

Defendant argues that he was denied a fair trial because the prosecutor made remarks during rebuttal argument that amounted to misconduct. As defendant acknowledges, he did not object to the challenged remarks at trial. Therefore, this claim is unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). We will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Defendant argues that the prosecutor improperly injected "her personal understanding of a female's anatomy" in the following emphasized remarks made during rebuttal argument:

> Now, when we're talking about the counts that apply to the cunnilingus, if you recall correctly, [the victim] said, yeah, he licked my vagina. She described feeling wetness and she said on her clitoris and in the area between where you wipe. Genital opening. That's where it was.
>
> *When she says—when she says "on," when we talked more about the anatomy, her anatomy and what parts we're talking about, she said he licked in the area where I wipe with—when I go to the bathroom, and she described her clitoris. That's not on. That's not outside her vagina, that's inside. That's in the opening, beyond the labia majora of her vagina. She might not know the technical terms for it, but that's her genital opening.* [Emphasis added.]

A prosecutor may not express inject herself into trial as a witness, *People v Rodriguez*, 251 Mich App 10, 35; 650 NW2d 96 (2002), or make a statement of fact to the jury that is unsupported by the evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). However, prosecutors are afforded great latitude when arguing at trial, *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and they need not state their inferences in the blandest possible language. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). An otherwise improper remark might not warrant reversal if the prosecutor is responding to defense counsel's argument. *Id.* at 64.

The prosecutor's remarks were responsive to defense counsel's assertion in closing argument that defendant was not guilty of CSC-I involving cunnilingus because the testimony indicated that defendant only licked "on her vagina" and "[o]n is not entry into." Even if the prosecutor discussed "her personal understanding of a female's anatomy," as defendant contends, defense counsel did the same during closing argument by suggesting that the areas that the victim described, i.e., her clitoris and the area that she wiped after going to the bathroom, were not a part of her genital opening. Considering the responsive nature of the prosecutor's remarks, there was no plain error.

Furthermore, a timely objection to the challenged remarks could have cured any perceived prejudice by obtaining an appropriate cautionary instruction. See *Watson*, 245 Mich App at 586. And even though defendant did not request a curative instruction, the trial court ultimately instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible

-3-

prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Defendant acknowledges the trial court's instructions, but asks this Court to presume that the instructions were ineffective. It is well established, however, that jurors are presumed to have followed their instructions, *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011), and defendant has not provided any basis for concluding that the jurors failed to do so in this case.

In addition, to the extent that the prosecutor's remarks could be considered improper, defendant bears the burden of showing actual prejudice, *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006), and reversal would only be warranted if the error resulted in the conviction of an actually innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of the defendant's innocence. *Carines*, 460 Mich at 752-753, 763-764. Similar to his argument in section I, *supra*, defendant's quarrel with the prosecutor's remarks is based on the faulty understanding that it was necessary for the jury to find actual penetration in order to convict him of CSC-I involving cunnilingus. Again, because cunnilingus, by definition, constitutes sexual penetration, and "[d]efendant's touching with his mouth of the urethral opening, vaginal opening, or labia establish cunnilingus," *Legg*, 197 Mich App at 133, the parties' disagreement over whether defendant's touching was "on" or "in" was immaterial to whether defendant was guilty of CSC-I involving cunnilingus. For these reasons, defendant is not entitled to a new trial based on the prosecutor's remarks.

### III. SCORING OF OV 11

Defendant argues that the trial court erred in assessing 50 points, rather than 25 points, for offense variable (OV) 11 of the sentencing guidelines.

To preserve a challenge to the scoring of the sentencing guidelines, the challenge must be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court. MCL 769.34(10); MCR 6.429(C); *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). Because defendant did not so challenge the scoring of OV 11, this issue is not preserved for appeal. Therefore, we review this unpreserved scoring challenge for plain error affecting defendant's substantial rights. *Id.*; *Carines*, 460 Mich at 752-753, 763-764. "Substantial rights are affected when the defendant is prejudiced, meaning the error affected the outcome[.]" *Jones*, 297 Mich App at 83.

OV 11 addresses criminal sexual penetrations. MCL 777.41. The trial court must score 50 points if "[t]wo or more criminal sexual penetrations occurred," MCL 777.41(1)(a), and 25 points if "[o]ne criminal sexual penetration occurred." MCL 777.41(1)(b). In determining the proper score for OV 11, a trial court may not count a sexual penetration that formed the basis for the conviction, MCL 777.41(2)(c), but may score all other "sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(1)(a). The phrase "arising out of" suggests "a causal connection between two events of a sort that is more than incidental." *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006). "Something that 'aris[es] out of,' or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisin." *Id.* In *People v Mutchie*, 251 Mich App 273, 277; 650 NW2d 733 (2002), aff'd on other grounds 468 Mich 50 (2003), this Court affirmed the scoring of OV 11 where "all three sexual penetrations

perpetrated by defendant against the victim occurred at the same place, under the same set of circumstances, and during the same course of conduct." *Id*.

Defendant argues that there was no evidence that two or more additional sexual penetrations arose, sprung, or resulted from a single sentencing offense, i.e., from any one of the offenses resulting in a first-degree CSC conviction, and therefore, the trial court erred in assessing 50 points for OV 11. However, the victim testified that on those occasions when defendant would lick her vagina, he "would do that first and then he would put his penis inside of [her]." In addition, the victim testified that when defendant was residing in the same residence, he would sexually penetrate her at night on multiple occasions in the living room or in her bedroom. Like in *Mutchie*, 251 Mich App at 277, here, the victim's testimony showed that these penetrations occurred at the same place, under the same circumstances and during the same course of conduct and there was a connective relationship between the assaults. *Johnson*, 474 Mich at 101. In short, there was record evidence to support the trial court's scoring of OV 11.

Moreover, even if the 50-point score for OV 11 constitutes plain error, it does not entitle defendant to resentencing because it did not affect defendant's substantial rights. The trial court scored the guidelines for one of defendant's four CSC-I convictions, which is a class A offense. MCL 777.16y. Defendant received a total OV score of 100 points, which combined with his 20 prior record variable points, placed him in the C-VI cell of the applicable sentencing grid, for which the minimum sentence range is 135 to 225 months. MCL 777.62. Defendant argues that OV 11 should have been scored at 25 points. The additional 25 points for OV 11 increased defendant's total OV score from 75 points to 100 points, which in turned changed his placement from OV Level IV (60 - 79 points) to OV Level VI (100+ points), resulting in a higher guidelines range. The guidelines range for an offender falling in the C-IV cell is 108 to 180 months. In general, a defendant is entitled to resentencing if a scoring error alters the sentencing guidelines range. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

In this case, defendant received a minimum sentence of 144 months—well within the altered guidelines range of 108 to 180 months. If a defendant has failed to preserve his challenge to the trial court's scoring decision, and his sentence is within the appropriate guidelines range, "the defendant cannot raise the error on appeal except where otherwise appropriate, as in a claim of ineffective assistance of counsel." *Francisco*, 474 Mich at 89 n 8. Defendant raises a separate ineffective assistance of counsel claim, which we address in section IV, *infra*.

Regarding his current argument, there is no indication that the trial court would have imposed a lesser minimum sentence if OV 11 had been scored at 25 points. At sentencing, the trial court specifically recognized that the sentencing guidelines are only advisory. See *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). The trial court provided reasons for the sentences it imposed, stating that "having heard the testimony, having looked at the submissions, looking at the evidence, does feel a *fair sentence* in this matter would be 12 years to 40 years." (Emphasis added.) In other words, the trial court did not rely on the guidelines when imposing defendant's 144-month sentence, which in any event falls squarely within even the altered guidelines range, and thus it is improbable that a lower guidelines range would have caused the trial court to impose a lesser sentence. For these reasons, defendant has not established that any error affected his substantial rights, or otherwise affected the outcome of the proceedings. Accordingly, he is not entitled to be resentenced.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel at trial and at sentencing. We disagree. Because defendant did not raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

We reject defendant's argument that he was denied the effective assistance of counsel because defense counsel failed to object to the prosecutor's remarks discussed in section II, *supra*. As we concluded earlier, the prosecutor's remarks were not clearly improper, but rather were a proper response to defense counsel's closing argument addressing the same matter. Therefore, defense counsel's failure to object was not objectively unreasonable. Further, because the trial court's instructions adequately protected defendant's rights, and because the basis for defendant's challenge to the remarks is legally flawed, defendant cannot demonstrate a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. *Id.*

We also reject defendant's argument that he was denied the effective assistance of counsel because defense counsel failed to object to the trial court's 50-point score for OV 11. There was evidence to support the trial court's scoring of OV-11 and, given the trial court's statements before imposing defendant's sentence, there is no indication that the court would have imposed a lesser minimum sentence if only 25 points had been assessed for OV 11. Again, the trial court was aware of the advisory nature of the guidelines and plainly expressed its belief that, given the evidence, the 12-year minimum sentence was a "fair sentence." It is noteworthy to point out again that defendant's minimum sentence falls squarely within the altered guidelines range of 108 to 180 months, and thus does not detract from the trial court's view that a 12-year minimum sentence was a "fair sentence." For these reasons, defendant cannot demonstrate a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional claims in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. None of these claims have merit.

In his only clearly stated issue, defendant makes the same sufficiency argument that we have already addressed, and rejected, in section I, *supra*. Within this issue, defendant appears to also argue that the evidence was insufficient to find him guilty beyond a reasonable doubt because the victim was lying and there were discrepancies in other prosecution witnesses' testimony. In making these arguments, however, defendant ignores that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of

the prosecution. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). Defendant's challenges are related to the weight and credibility of the evidence rather than its sufficiency. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). Indeed, these same challenges were presented to the trier of fact during trial. This Court "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Defendant states that the prosecutor "knew" that the victim was lying and cites instances where the victim's testimony differed from her prior testimony and her classmate's trial testimony, thereby appearing to argue that the prosecutor knowingly presented perjured testimony by the victim. Because defendant did not object to the prosecutor's conduct below, we review this unpreserved claim of prosecutorial misconduct for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. A defendant's right to due process "is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). Thus, a prosecutor has "an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *Id.*

The inconsistencies listed by defendant do not establish that the prosecutor knowingly used perjured testimony to obtain defendant's conviction. *Gratsch*, 299 Mich App at 619; *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Although there were instances when the victim's trial testimony differed from her prior testimony, there is no indication that the prosecutor sought to conceal those inconsistencies from defendant. *Id.* In fact, defendant himself cites examples of where defense counsel cross-examined the victim about her inconsistent testimony. Additionally, testimony that conflicts with other witnesses' testimony does not lead to the conclusion that the prosecutor knowingly used perjured testimony. Defendant's argument does not involve an issue of perjury, but of credibility. Defense counsel explored the credibility problems with the victim's testimony, as well as other prosecution witnesses. The jury was free to believe or disbelieve all or any portion of the victim's trial testimony. *Unger*, 278 Mich App at 222.

Defendant appears to raise additional ineffective assistance of counsel claims. Because defendant did not raise these claims in the trial court, our review of this issue is limited to mistakes apparent on the record. *Heft*, 299 Mich App at 80.

Defendant states that there were "questions and answers [he] felt that needed to be asked and answered in reference to the buccal swab." However, decisions about what questions to ask are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Defense counsel has wide discretion regarding matters of trial strategy. *Heft*, 299 Mich App at 83. Furthermore, having reviewed defendant's proposed question, defendant has not identified any omission that prejudiced his case.

Defendant also states that he noticed "a lot of wrong doing," informed defense counsel, and defense counsel "kept looking over it." Defendant provides no evidence to support this cursory complaint. Defendant has the burden of establishing the factual predicate of his

ineffective assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Defendant also states that defense counsel "didn't even point [] out" when a detective "lied about [the victim's god brother] saying he played truth or dare." The record does not support this claim. During direct examination, the detective testified that the god brother stated that he "does not remember playing truth or dare with [the victim]," "[b]ut that's not to say it didn't happen." During the defense's case, defense counsel recalled the detective and elicited that the detective did not write in his police report that the god brother stated that "he could have" played truth or dare with the victim; the detective wrote only that the witness said he never played the game with her. Therefore, these claims are without merit.

Lastly, defendant has attached numerous documents to his supplemental brief, including police reports, a Child Protective Services investigation report, medical records, and laboratory reports. He urges this Court to "look and compare" the discrepancies. However, defendant does not further explain how these documents support a claim for relief. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Consequently, defendant has abandoned whatever remaining claims he believes might be supported by the numerous documents attached to his brief.

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello